Note.—Reported in 206 N. W. 576. See, Headnote (1) and (2), American Key-Numbered Digest, Partnership, Key-No. 64, 30 Cyc. 420; (3) Appeal and error, Key-No. 931(6), 4 C. J. Secs. 2726, 2727; (4) and (5) Libel and slander, Key-No. 130, 37 C. J. Sec. 599; (6) Libel and slander, Key-No. 134, 37 C. J. Secs. 601, 601 (Anno); (7) Libel and slander, Key-No. 135, 36 C. J. Sec. 69; (8) Libel and slander, Key-No. 139, 37 C. J. Sec. 362.

On Rev. Code 1919, Sec. 1336, see Annotations Kerr's Cyc. Codes 1920, Civ. Code, Sec. 2468.

---

JOHNSON et al, Respondents, v. DAKOTA NATIONAL
BANK, Appellant.    (Two cases.)

(207 N. W. 217.)

(File Nos. 5381, 5382.    Opinion filed February 8, 1926.)

1. **Mortgages—Foreclosure—Homestead—Sales of Tracts Made Up of Contiguous Lots, Habitually Used Together Solely as Homestead, Not Void.**

Under Rev. Code 1919, Secs. 457, 458, mortgaged foreclosure sales of contiguous lots, habitually used together solely as homestead, were not void because lots were sold en masse, instead of separately.

2. **Mortgages—Foreclosure—Foreclosure Sale of Lots En Masse Held Justified in Equity.**

Where mortgages and interest thereon were long past due, mortgagee, because of mortgagor's neglect, was compelled to pay large amount of assessments and taxes, liens of which

were created against homestead without mortgagee's fault, and advance large sums to protect loans, and value of securities was greatly reduced, foreclosure sale of lots constituting homestead en masse was justified in equity.

3. **Mortgages—Sheriff's Deed—Purchaser at Foreclosure Sales Held Entitled to Sheriff's Deeds on Face of Complaint in Action to Redeem.**

Where complaint, in action to redeem from mortgage foreclosure sales and enjoin issuance of deeds, alleged that sales were made on dates more than year and more than three years, respectively, before action was brought, and that time for redemption had fully expired, purchaser, on face of complaint, under Rev. Code 1919, Sec. 2890, was entitled to sheriff's deeds.

4. **Appeal and Error—Pleadings—Only Grounds Urged and Argued in Support of Complaint Considered.**

Where respondent stated and argued but two grounds, on which he claimed that his complaint stated a cause of action, no others will be considered.

5. **Mortgages—Redemption—Complaint to Redeem Held to Show That Payment by Mortgagor Was Applied on Valid Judgment Against Him Without Duress or Compulsion.**

Complaint, in suit for permission to redeem from mortgage foreclosure sales after expiration of redemption period, held to show on its face that payment made by plaintiff was rightfully applied by him on a valid judgment for defendant, without duress or compulsion, that he had no money with which to redeem if time were extended, and that only usual and ordinary proceedings to collect debts were taken against him by defendant.

6. **Husband and Wife—Judgments—Judgment Against Husband and Wife Held Vacated as to Wife Only.**

Where husband's motion to vacate default judgment against him was not granted, word "vacated," in order vacating judgment, was limited by words "so far as relates to her," and wife only was permitted to defend, order opened judgment as to her only, and left it in full force against him and a lien on his land.

7. **Judgment—Findings—Judgment Vacated as to One Defendant, With Permission to Defend, Stands in Reduced Amount Adjudged After Hearing Without Further Proceeding.**

Where testimony was taken on merits of claim of defendant, as to whom default judgment was vacated with permission to defend, court's finding that judgment against her should be for lesser amount closed case as to her, and left judgment for such amount against her without further proceeding.

8.  **Husband and Wife—Equity—Judgments—Judgment Against Homestead and Husband Held Not Entirely Vacated as to Husband by Setting It Aside as to Wife.**

    Judgment against the homestead of husband and wife in certain amount, and against husband in larger amount, part of which is joint judgment with wife, cannot be considered an entirety, so that opening and setting it aside as to the wife would vacate it as to the husband also, in view of Rev. Code 1919, Sec. 2563; rule that judgment void as to one defendant is void as to all applying only to judgments at law.

9.  **Appeal and Error—Execution Sales—Pleadings—Whether Complaint for Redemption from Execution Sale Was Filed on Time Held Moot Question.**

    Where complaint showed that no tender or payment was or could be made on judgment, even if time of redemption from execution sale was extended, questions presented in suit to redeem, such as timeliness of complaint filed on Monday following Sunday on which last day for redeption fell, were moot.

Appeal from Circuit Court, Yankton County; HON. ALVA E. TAYLOR, Special Judge.

Actions by Olaf Johnson and wife against the Dakota National Bank. From orders overruling demurrers to complaints, defendant appeals. Reversed and remanded, with orders to sustain demurrers.

*Clark & Henderson* and *H. A. Robinson,* all of Yankton, for Appellant.

*Harry Kunkle,* of Yankton, and *Payne, Olson & Barton,* of Vermillion, for Respondents.

(1)  To point one of the opinion, Appellant cited: Hagan v. Pratt, 192 N. W. 370.

(3)  To point three, Appellant cited: First National Bank v. Black Hills Fair Assn., 2 S. D. 145, 48 N. W. 852.

(7)  To point seven, Respondent cited: Sturgis, Cornish & Brown Co. v. Miller et al (Neb.), 112 N. W. 595.

SHERWOOD, J.  This is an appeal from an order overruling a demurrer to a complaint, which alleged in substance:

That in an action brought by defendant versus plaintiff to foreclose a real estate mortgage on lots 7, 8, 9, 10, and 11 in block 41, Witherspoon's addition to Yankton, these separate lots were sold en masse for the sum of $1,748.58. That the principal,

interest, and costs due on this mortgage at the time of sale were $1,163.32, and judgment was entered by default in said action for $1,163.32. That plaintiff, claiming to have paid $533.15 for certain taxes and assessments on the property directed, that the property be advertised for sale for the said $1,163.32 and said $533.15, together with interest. That it was so advertised and sold on the judgment, and bought in by plaintiff for $1,748.58. That no money was paid by mortgagee on foreclosure, but the whole amount of the bid was credited on what the bank claimed said mortgagors owed them, and a certificate was issued on said sale to said mortgagors for $1,748.58. That the sale for sums alleged to have been assessed for taxes and assessments was void, and deprived or tended to deprive plaintiffs of their right to object to the taxes and assessments, and greatly augmented the amount required to redeem from sale, and made it impossible for plaintiffs to redeem from sale.

That the sale was void because made on masse instead of in separate tracts. That said property was at all times the homestead of the mortgagors. That the fair value of the property sold was as follows: Lot 7, $5,000; lot 8, $1,000; lot 9, $1,250; lot 10, $1,000; lot 11, $1,000, and the entire value of all said lots was $9,250, and that they were of that value at the time of the sale. That plaintiff was wholly without means or money to pay the judgment or redeem from said sale, and ever since has been without means or money to pay the same; but, if the sale had been made as required by law, in distinct lots, separately, plaintiff had sufficient means to redeem from the sale of some of the lots.

That at the time of the foreclosure of the above mortgage, from which redemption is now sought, said bank, through its president, F. C. Danforth, held a deed to the premises above described, and in addition to lot 6 in the same block, which deed was held as security for a promissory note dated July 23, 1918, for $2,157, and that this deed was not held for security for any other sum whatever. That all said premises since 1906 had been and were at the time of the sale the homestead of the plaintiffs. That some time in the year 1919 an action was commenced against these plaintiffs, alleging that said deed was given to secure the $2,157 note and other alleged notes of Olaf Johnson and certain items of paving and sewer assessments aggregating

$1,514.70, principal, besides accrued interest. That judgment was rendered by default on this complaint for $3,856.11 and accrued interest, amounting to $4,407.51 with costs. That special execution was issued on this judgment, and on October 18, 1919, said premises were sold for the total sum of $3,000 to plaintiff bank; plaintiff paying no money, but the amount being credited on the judgment after paying costs.

That in truth the deed was not given by mortgagors for any of the notes or obligations alleged in the complaint except the note for $2,157, and as far as the judgment was in excess of $2,157, interest, and costs of suit, it was an oppression against mortgagors, who are plaintiffs in this case, and greatly augmented the amount to be paid by plaintiffs above the amount justly due. That thereafter proceedings were taken against property owned by Olaf Johnson in the state of Tennessee to collect such judgment by foreclosure, whereupon said Johnsons sold the Tennessee property and paid $1,425 of the proceeds of the sale of that property and the further sum of $185 on said judgment, all of which the bank still retains. That at the time of making such payments plaintiffs believed the judgment to be a binding obligation.

Such proceedings were later had on motion of defendant Inga Johnson, that on November 4, 1920, an order was entered by the court that the judgment entered on September 9, 1919, so far as it related to Inga Johnson, "be, and the same is hereby, vacated and she is permitted to defend said action upon the merits, the same as if said judgment had never been rendered against her." The bank excepted to this order, and appealed to the Supreme Court, where said order was affirmed. That the action, in which the judgment was set aside as to Inga Johnson and she was permitted to defend, was tried and findings entered in which it was found that the amount due Dakota National Bank from plaintiffs, for which the premises described in the deed were security, was only the principal and interest of the promissory note for $2,157; the note being dated July 23, 1918, and being executed by both Inga and Olaf Johnson, together with paving and sewer assessments, amounting altogether with costs of suit to $3,280.28. Plaintiff, desiring to redeem from said judgment and sale, offered to redeem and tendered so much of

said proceeds as is required to pay and satisfy said judgment and sale.

That the time of redemption has expired, and the bank is threatening to take a deed. The prayer to said complaint asked that plaintiffs be permitted to redeem from said judgment and sale within such time as may be fixed by the court, and prays an order enjoining the issue of a deed on such foreclosure sale and from applying for such deed. A demurrer to this complaint was interposed on the sole ground that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was overruled, and defendant has appealed.

It is appellant's contention: That the facts alleged in the complaint do not state a cause of action (a) because the sale was valid; (b) because, since the action was not commenced within the period of redemption, it cannot be maintained upon the facts alleged in the complaint.

Respondents state their contention as follows:

"Respondents' claim for relief in this case is based upon two reasons: (1) That the money paid upon the judgment rendered September 9, 1919, in the circuit court of Yankton county, was paid under duress or compulsion; (2) that the judgment of September 9, 1919, and the sale had thereunder were set aside as to both Olaf Johnson and Inga Johnson. * * * 'That, if either of these contentions is correct, then the complaint states a cause of action.'"

[1] Discussing appellant's contention (a): Admitting all the well-pleaded facts set forth in this complaint, were these foreclosure sales void because the property sold consisted of separate lots and was in each case sold en masse? We think not. The complaint shows that the five lots sold on the first mortgage were palintiffs' homestead, and that these five lots, together with one other lot, were covered by and sold under the second mortgage, and that the six lots covered by the second mortgage were also plaintiffs' homestead.

It follows that the complaint shows affirmatively that at the time of each sale the tracts sold were contiguous and "habitually and in good faith used as a part of the same homestead." Sections 457, 458, and 459, R. C. 1919. In other words ,the property sold at each sale consisted in fact of but one tract habitually used

together for about ten years for one purpose. "That is sufficient to sustain the foreclosure sale." Hagan v. Pratt, 46 S. D. 267, 192 N. W. 370; First National Bank of Deadwood v. Black Hills Fair Association, 2. S. D. 145, 48 N. W. 852; Thompson v. Browne, 10 S. D. 344, 73 N. W. 194; Northwestern Mtge. Trust Co. v. Bradley, 9 S. D. 495, 70 N. W. 648.

[2] It further appears affirmatively from the complaint that at the time of the sale there was a first mortgage covering five of the lots, a second mortgage on all six of the lots; that both of the mortgages with a large amount of interest were long past due; that by reason of the neglect of the respondents appellant had been compelled to pay under each of the mortgages a large amount of assessments and taxes levied against the lots; that these various liens created or permitted by respondents were interwoven upon this homestead property through no fault of appellants; that they had been obliged to advance large sums to protect their original loans, and the value of their securities had been greatly reduced. The complaint therefore makes a case for defendants which appeals more strongly to equity than do the rights of the mortgagors. Hagan v. Pratt, supra.

We therefore hold that the facts pleaded in this complaint do not constitute allegations showing either sale was invalid because made en masse. In other words, the allegations of the complaint, taken as a whole, show the sale en masse was justified.

[3] Discussing appellant's contention (b): The complaint affirmatively shows two judgments were taken against defendants; one on September 9, 1919, and one on September 11, 1919. The judgment taken September 9th was for $4,407.51. The judgment of September 11th was for $1,163.22. On the judgment of September 9th the property was sold October 18, 1919, for $3,000 and bid in by defendant bank for $3,000. On the judgment of September 11th the property was sold January 15, 1921, and bid in by defendant bank for $1,748.58, the amount of the judgment and certain assessments and taxes paid.

This action was begun February 27, 1922, one year and twelve days after the last sale, and three years five months and eighteen days after the first sale. It therefore affirmatively appears and the complaint affirmatively alleges, that the time for redemption had fully expired before this action was brought. Appellant was

therefore, on the face of the complaint, entitled to a sheriff's deed on both sales before the action was brought.  Section 2890, R. C. 1919; Clark Imp. Co. v. Wadden, 34 S. D. 550, 149 N. W. 424, L. R. A. 1915C, 414; Hollister v. Donahoe, 11 S. D. 497, 78 N. W. 959; Phelan v. Morris, 32 S. D. 174, 142 N. W. 470; First Nat. Bnk. of Deadwood v. Black Hills Ass'n, supra.

[4]  Respondent has stated but two grounds on which he claims his complaint states a cause of action, and has argued no other grounds.  Therefore, under the well-settled practice of this court, no others will be considered.

[5]  Considering respondent's contention No. 1:  Do the allegations in the complaint, setting forth the payments made by Olaf Johnson on the judgment against him state a cause of action for duress or compulsion in obtaining such payment?  The pleadings show a judgment was obtained by appellant against Olaf and Inga Johnson by default for $4,407.70; that this judgment was set aside as to Inga Johnson only (this setting aside will be more fully discussed under No. 2) ; that, after the judgment had been obtained and all the property covered by the mortgage sold thereunder, there still remained due from Olaf and Inga Johnson on this judgment to appellant bank $280.28, and from Olaf Johnson on said judgment $1,407.70, making a total balance due from Olaf Johnson to appellant bank on such valid judgment of $1,687.98, when he paid the $1,610.  Therefore it appears from the face of the complaint:  That the $1,610 plaintiff now purports to tender was rightfully applied by him upon a valid judgment he then owed to appellant bank; that he now has not and has not had any money to apply in redemption of the property, should the time of redemption be extended as prayed; that the proceedings taken against him to collect were only the usual and ordinary proceedings taken by creditors in the usual way to collect debts.

[6]  Discussing respondents' No. 2:  Does the complaint state facts which, if true, would show the judgment against Olaf Johnson was vacated?  Respondents' claim that it does is based on the following order set forth in full in the complaint as follows:

"The application of the defendant Inga Johnson to vacate the judgment herein served September 3, 1920, was presented on the matters stated in her notice of motion by Harry Kunkle, her at-

torney, and in opposition thereto, the plaintiff, by its attorney Harry A. Robinson, appeared; whereupon the judge of the court suggested that this was a difference that he would very much like to have the parties adjust themselves, and time was taken by them for that purpose, but it appeared they did not succeed in settling their differences, and they came before the court again November 4, 1920, when defendant, Olaf Johnson, sought to vacate the judgment herein against him, and she asked leave to amend her former application, and her motion to so amend was granted, and the papers counter to his application were also considered upon her original and amended application:

"It is ordered and adjudged that the judgment herein of September 9, 1919, so far as relates to her, be, and the same is hereby, vacated, and she is permitted to defend said action upon the merits the same as if said judgment had never been rendered against her."

We think it is clear from this order that, while the trial court used the word "vacated" as to that part of the judgment which applied to Inga Johnson, what the court actually did and what it actually intended to do was to open the judgment as to Inga Johnson only, and to refuse to open or vacate it as to Olaf Johnson. This is clear from the following facts, all of which appear on the face of the complaint:  (1) Olaf made a motion at the same time to vacate the judgment against him.  (2) Olaf's motion was not granted.  (3) The word "vacated" is limited in the order by the words, "so far as relates to her," and she only was permitted to defend.  We think these facts clearly show the court intended to open the judgment only as to Inga Johnson; to permit testimony in her behalf only as to the amount she had consented the deed should be security for, because it appears from the pleadings to be the only question in dispute between her and the bank.

The failure to grant Olaf's motion was equivalent to a refusal by the trial court to vacate the judgment as to him. This being so ,the complaint in effect sets forth that the trial court opened the judgment as to Inga Johnson only, to permit her to show how much she consented the deed should stand as security for; that the court refused to open or vacate the judgment against Olaf Johnson, leaving it intact and in full force against him and

a lien on the land. What was done by this order is sustained by the following authorities:

In Griswold Linseed Oil Co. v. Lee, 1 S. D. 531, 47 N. W. 955, 36 Am. St. Rep. 761, this court said:

"In pursuance of the authority conferred by the provisions of section 4939, Comp. Laws, as well as by its general powers, a court may modify a judgment by depriving it of its order character as res adjudicata and leaving it in full force as a lien or collateral security"—citing Mott v. Bank, 38 N. Y. 18, How. Pr. 332; Anon., 6 Cow. (N. Y.) 390; Wilson v. White, 7 Cow. 477.

In 2 Freeman on Judgments (5th ed.), § 993, under the title "Opening, Vacating, and Restoration of Judgments," it is said:

"There is a difference in some states at least between opening a judgment and vacating it. Where the judgment is merely opened for the purpose of letting the defendant in to a defense, and it is not thereby vacated, its lien is not destroyed, particularly if the court directs that the judgment shall stand as security. However, the absolute vacation of the judgment leaves the lien without support, and the judgment debtor is at liberty to dispose of and incumber his real estate as if the judgment had never been rendered."

[7] The complaint further shows that testimony was taken on the merits of Inga Johnson's claim, and the court found and adjudged that judgment against her should be for only $3,280.28 instead of $4,407.70. We think the effect of this finding closed the case as to her and left this judgment as to her $3,280.28 and as to him $4,407.70 without further proceeding.

"Where after a judgment leave is granted to the defendant to plead, 'the judgment to stand,' and, on trial of the general issue, plaintiff had a verdict for less than the amount of the original judgment, it is proper to let the judgment stand as of its original date for such reduced amount, rather than to enter it as of the date of the verdict." 1 Black on Judgments, § 335; Dulle v. Lally, 167 Ill. 485, 47 N. E. 753.

In Pennsylvania, the usual and favorite practice, upon a proper and timely application for relief against a judgment by confession or default, is to open the judgment, but without vacating it and without impairing its lien, and let the defendant in to a defense on the merits. It is in the light of this statement that

we are to understand the remark that to open the judgment is not to set it aside, and that, when it is closed by the action of the court, it takes its place as if it had never been disturbed.

[8]   It follows that these pleadings show a judgment against the homestead of $3,280,28 and against Olaf Johnson of $4,407.70; $3,280.28 of Olaf's judgment is a joint judgment with Inga, and $1,127.42 was an individual and unsecured claim against Olaf Johnson.   It follows that such a judgment could not be considered an "entirety," so that opening and setting it aside as to one would vacate it as to the other also.   This is true because this is a judgment in equity, and the rule that a judgment void as to one is void as to all defendants applies only to judgments at law. 1 Black on Judgments, § 211.   Voorhis v. Gamble, 6 Mo. App. 1; Dickerson v. Crissman, 28 Mo. 134.   It is true, because under our statute and the modern doctrine judgments may be entered for or against any defendant.   Section 2563, R. C. 1919; 1 Black on Judgments, § 234.

It is not claimed by these pleadings that Olaf's payment on his judgment was not voluntary, if the judgment as to him was valid. It is not claimed more was paid by either or both defendants than was actually due from them.   It is affirmatively alleged that they have not now, and for a long time prior hereto have not had, any money to either pay or tender on this debt, unless this $1,610 paid by Olaf on his judgment can be recalled from that voluntary payment and applied to extend the time of redemption another year.   We think the complaint fails to state a cause of action, and the demurrer should have been sustained.

[9]   What has been said as to the instant case ,also disposes of case No. 5382 between the same parties, and founded on the same facts.   While in the last-mentioned case the action was begun on January 16, 1922, and it is alleged in the complaint that January 15th fell on Sunday, and therefore the action was begun on the last day of redemption, we think the complaint on its face still fails to state a cause of action, because, like the former complaint it shows no tender or payment is or could be made on the judgment; even if time of redemption is extended, that plaintiffs have nothing to pay with.   The questions presented, if there were any, would be moot questions only, of no avail to any one.

The order of the lower court overruling the demurrer is re-ersed in each case, and the cases are remanded, with orders to sustain the demurrers interposed in both cases.

DILLON, J., disqualified and not sitting.